[Cite as *State v. Ryan*, 2021-Ohio-4059.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-L-032 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| NICHOLAS P. RYAN, | Trial Court No. 2019 CR 000677 |
| Defendant-Appellant. | |

## O P I N I O N

Decided: November 15, 2021
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Jay F. Crook*, Jay F. Crook, Attorney at Law, LLC, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Nicholas P. Ryan ("Mr. Ryan"), appeals from the judgment of the Lake County Court of Common Pleas, which revoked his community control and imposed a term of imprisonment after he was found guilty of violating his community control sanctions. More specifically, Mr. Ryan agreed to abide by the rules of probation set forth by the Adult Probation Department and to follow the trial court's additional sanctions and conditions.

{¶2} Conditions and sanctions pertinent to this appeal were (1) to follow local, state, or federal laws; (2) to not have under his control any controlled substance not prescribed by a licensed physician; (3) to have "no involvement with drugs or alcohol, including marihuana"; and (4) to "have one (1) prescribing physician * * * and one (1) pharmacy, and * * * to inform the Lake County Probation Department of any change in providers * * *." Mr. Ryan subsequently used his medical marijuana card to purchase marijuana on five occasions between October 23, 2020, and November 6, 2020.

{¶3} In his sole assignment of error, Mr. Ryan contends the trial court erred in issuing "probation restrictions" that are in violation of the provisions of the Ohio medical marijuana control program ("the OMMCP"), R.C. Chapter 3796.

{¶4} After a review of the record and pertinent caselaw, we find Mr. Ryan's assignment of error to be without merit. Mr. Ryan acknowledged and agreed to the community control sanctions and probation rules at the time of sentencing. Despite the unambiguous terms of the sanctions and conditions, the state established that Mr. Ryan used his medical marijuana card five times at a local dispensary, which was not his listed pharmacy, without notifying his probation officer. Moreover, Mr. Ryan never submitted a valid medical marijuana card into evidence at the revocation hearing or even attempted to argue medical marijuana was, for him, a medical necessity. Indeed, whether Mr. Ryan used the marijuana was not at issue since whether purchased from a dispensary or on the street, his urine screens demonstrated he was not using marijuana. In fact, Mr. Ryan, a convicted drug trafficker, admitted he was "stockpiling" it.

{¶5} There is no doubt that Mr. Ryan violated the terms of his community control sanctions inasmuch as marijuana in any form remains illegal under federal law; he had a

2

controlled substance without a valid prescription under his control; and he was using both a dispensary and a pharmacy without advising his probation officer, all in violation of the Lake County Court of Common Pleas/Adult Probation Department Rules.

{¶6}    The judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶7}    In the underlying case, Mr. Ryan pleaded guilty by way of information to (1) trafficking in L.S.D., a fourth-degree felony, in violation of R.C. 2925.03(A)(2), with two forfeiture specifications pursuant to R.C. 2941.1417 and R.C. 2981.04 for contraband and a large sum of cash ($1,514); and (2) aggravated possession of drugs, a fifth-degree felony, in violation of R.C. 2924.11, with two forfeiture specifications pursuant to R.C. 2941.1417 and R.C. 2981.04 for contraband and cash.

{¶8}    The presentence investigation report ("PSI") noted that Mr. Ryan was issued a medical marijuana card on March 19, 2019, upon a recommendation from Dr. Alan Wine for the treatment of post-traumatic stress disorder ("PTSD"). He was also seeing Mikaela Pope, a psychiatrist for medication management, once every three months. Test results of a urine sample submitted at the time of the presentence interview on November 5, 2019, were positive for marijuana. The PSI further stated that "[i]t should be noted that the defendants [sic] bond was not revoked per Judge Vincent A Culotta. An Ohio Automated RX Reporting System ("OARRS") report generated on November 21, 2019 provided negative results."

{¶9}    The trial court sentenced Mr. Ryan to two years of community control sanctions on each count to be served concurrent to each other. Included in his community control sanctions were a prohibition against alcohol use and the possession, use, or

3

control over any controlled substance, including marijuana; a requirement to attend Alcoholics/Narcotics Anonymous; and the requirement to inform the Adult Probation Department of any changes in prescribing providers and/or pharmacies. The court noted that a violation of his sentence would result in a more restrictive sanction, a longer sanction, or a prison term of 18 months on count one and 12 months on count two, for a total prison term of 30 months.

{¶10} Several months later, the state filed a motion to terminate community control sanctions with a letter from the Adult Probation Department indicating Mr. Ryan's community control should be revoked because he was cited for failing to reinstate/expired plates, abusing harmful intoxicants, and possession of drug paraphernalia.

{¶11} The trial court found Mr. Ryan guilty of failure to reinstate/expired plates and abusing harmful intoxicants. The court further found Mr. Ryan not guilty of possession of drug paraphernalia because the charge had been dismissed.

{¶12} The trial court continued Mr. Ryan's community control for a total of two years and imposed further sanctions and conditions, which included 90 days in jail, with 25 days served; participation in the North East Ohio Community Alternative Program ("N.E.O.C.A.P."); abstaining from drugs and alcohol; submitting to periodic screens; attending three Alcoholics/Narcotics Anonymous meetings per week; taking all prescribed medications and only as prescribed; and requiring Mr. Ryan to have "only one (1) prescribing physician, one (1) dentist, and one (1) pharmacy. The Defendant shall sign all necessary medical releases and is to inform the Lake County Adult Probation Department of any change in providers. The Defendant is to advise all providers of any addiction."

4

{¶13} Based on the recommendations of the Lake County Adult Probation Department and N.E.O.C.A.P., the trial court later vacated the condition of Mr. Ryan's community control sanctions requiring him to serve 30 days in the Lake County jail and participate in the Transitional Reporting Program.

{¶14} Several months later, the state filed a second motion to terminate community control with an attached letter from the Adult Probation Department, which alleged five violations of Rule No. 8 of the Lake County Court of Common Pleas/Adult Probation Department Rules because Mr. Ryan used his medical marijuana card five times at The Botanist, a dispensary in Wickliffe, Ohio, on October 23, 2020, October 27, 2020, October 29, 2020, October 30, 2020, and November 6, 2020. The state later filed a supplement also alleging five violations of Rule No. 1.

{¶15} Rule No. 8 states: "You shall not use, possess, or have under your control any controlled substance not prescribed to you by a licensed physician. Use of alcohol is prohibited." Rule No. 1 states: "You shall obey all local, state, and federal laws. (You will be arrested for violating any local, state, or federal laws.)"

{¶16} Mr. Ryan's probation officer, Nicole Randazzo ("Ms. Randazzo"), testified at the probation violation hearing that she discovered the alleged violations upon receipt of Mr. Ryan's OARRS (Ohio Automatic Rx Reporting System) report, which was admitted into evidence. The dispensary reported the purchases on the OARRS report, noting the quantity of marijuana and the number of days allotted, i.e., Mr. Ryan purchased the marijuana in quantities that were for two- and three-day periods.

{¶17} During his office visit with Ms. Randazzo, Mr. Ryan admitted to filling "prescriptions" for medical marijuana at The Botanist. He also told her he had disposed

5

of the drugs after getting into an argument with his girlfriend. Ms. Randazzo further testified that she "had a question for him as to how he was filling prescriptions for medical marijuana and testing * * * negative. So my questions were: 'Were you using the marijuana or were you selling marijuana?'" Mr. Ryan told her he was neither using nor selling, rather, he was "stockpiling" the medical marijuana.

{¶18} On cross-examination, Ms. Randazzo testified she requested that the prosecutors file a probation violation for Rule No. 8 of the Adult Probation Department's rules. She further stated that Mr. Ryan did not test positive for marijuana during that time frame, nor did he purchase more than the prescribed amount in violation of medical marijuana card regulations. Ms. Randazzo was aware that Mr. Ryan suffered from anxiety and panic attacks related to incidents with his treatment counselor from Lake Geauga Center, where the counselor solicited drugs from him while he was in drug counseling. She agreed that Mr. Ryan was compliant with all the other conditions of his community control.

{¶19} The court inquired if Mr. Ryan was supposed to "have one doctor, one dentist, and one pharmacy?" Ms. Randazzo explained that Mr. Ryan was required to inform his probation officer of all pharmacies and doctors. Mr. Ryan had a prescription for other medication, which he filled at Rite-Aid, but he never advised her that he used or was planning to use his medical marijuana card at The Botanist.

{¶20} The trial court found that Mr. Ryan violated the terms and conditions of his community control sanctions by violating Rule No. 1 and Rule No. 8 when he used his medical marijuana card at The Botanist on five occasions. The court also found he was not amenable to community control and imposed concurrent prison terms of 17 months

6

on count one, trafficking in L.S.D., and 11 months on count two, aggravated possession of drugs.

{¶21} Mr. Ryan raises one assignment of error on appeal:

{¶22} "The trial court erred in issuing probation restrictions that were in violation of the provisions of the Ohio Medical Marijana [sic] laws."

## Sentencing Standard of Review

{¶23} "'A community control revocation hearing is not a criminal trial, so the state is not required to establish a violation of the terms of the community control "beyond a reasonable doubt."'" *State v. Motz*, 2020-Ohio-4356, 158 N.E.3d 641, ¶ 26 (12th Dist.), quoting *State v. Kincer*, 12th Dist. Clermont No. CA2005-07-059, 2006-Ohio-2249, ¶ 5. Rather, the state need only present substantial evidence of a violation of the defendant's community control. *Id.*; *State v. Pickett*, 12th Dist. Warren No. CA2014-09-115, 2015-Ohio-972, ¶ 13.

{¶24} Further, we review a trial court's finding of a community control violation under an abuse of discretion standard, and a "trial court's decision to revoke community control even for a 'minor' violation, is not an abuse of discretion." (Citations omitted.) *State v. Bika*, 11th District Portage Nos. 2018-P-0096 & 2018-P-0097, 2019-Ohio-3841, ¶ 28. An abuse of discretion is a term of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *Id.*, quoting *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-78 (1925). Stated differently, an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *Id.* at ¶ 28, quoting *State v.*

7

*Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶25} "'A trial court does not abuse its discretion by revoking an offender's community control where the violation in question was one over which the offender had control.'" *State v. Noonan*, 12th Dist. Butler Nos. CA2018-10-203 & CA2018-10-204, 2019-Ohio-2960, ¶ 19, quoting *State v. Tranter*, 12th Dist. Clermont No. CA2000-05-035, 2001 WL 290192, *3 (Mar. 26, 2001). A trial court also does not abuse its discretion in revoking community control "'when the offender is on notice that successful participation in a particular program is a requirement of the community control and the offender is unsuccessfully discharged from the program.'" *Motz* at ¶ 28, quoting *State v. Smith*, 12th Dist. Warren No. CA2019-09-104, 2020-Ohio-3235, ¶ 8. The privilege of community control rests upon a defendant's compliance with the conditions of community control and any violation of those conditions may properly be used to revoke the privilege. *Id.*

{¶26} In his sole assignment of error, Mr. Ryan contends the trial court erred in issuing probation violations that were in contravention of the OMMCP.

**The OMMCP**

{¶27} The OMMCP is contained in R.C. Chapter 3796 and defines "medical marijuana" as "marijuana that is cultivated, processed, dispensed, tested, possessed, or used for a medical purpose." R.C. 3796.01(A)(2).

{¶28} At the outset and despite some argument to the contrary, we must clarify that marijuana continues to be illegal under federal law. *See* 21 U.S.C. 841(a)(1) and 844. Thus, it remains illegal for physicians to prescribe the controlled substance. A medical marijuana card, referred to as a "registry identification card" pursuant to Ohio

8

Adm.Code 3796:7-1-01(E), is not a prescription, but rather, is issued based on a physician's "recommendation" for its use. *See* R.C. 4731.30; Adm.Code 4731-32-02. Further, a dispensary is not a pharmacy. A "'dispensary', as used in Chapter 3796. of the Revised Code, means an entity licensed pursuant to sections 3796.04 and 3796.10 of the Revised Code and any rules promulgated thereunder to sell medical marijuana to qualifying patients and caregivers." Ohio Adm.Code 3796:1-1-01(A)(13).

### Community Control Sanctions

{¶29} Pursuant to R.C. 2929.15(A)(1), "[t]he court may impose any other conditions of release under a community control sanction that the court considers appropriate, including, but not limited to, requiring that the offender not ingest or be injected with a drug of abuse and submit to random drug testing as provided in division (D) of this section to determine whether the offender ingested or was injected with a drug of abuse and requiring that the results of the drug test indicate that the offender did not ingest or was not injected with a drug of abuse."[1]

{¶30} Thus, R.C. 2929.15(A)(1) vests the trial court with the discretion to impose any condition of community control conditions or requirements it deems appropriate. Courts have broad discretion when imposing conditions. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. The relevant inquiry to determine whether a court abused this discretion in imposing a condition is three-fold: (1) is the condition reasonably related to rehabilitating the offender, (2) does it have some relationship to the crime of which the offender was convicted, and (3) does it relate to conduct that is criminal

---

1. No sentencing transcript has been submitted on appeal; thus, we presume the regularity of the sentencing proceedings below. *State v. Hundzsa*, 11th Dist. Portage No. 2008-P-0012, 2008-Ohio-4985, ¶ 19.

9

or reasonably related to future criminality and serves the ends of probation. *Id.* at ¶ 12; *State v. Dahlberg*, 11th Dist. Ashtabula No. 2020-A-0030, 2021-Ohio-550, ¶ 81.

{¶31} This is not the first case we have considered whether prohibiting medical marijuana is within the trial court's discretion. Indeed, in *Dahlberg*, after applying the Supreme Court of Ohio's test in *Talty*, we found that the trial court "was well within its discretion to impose any variety of community control conditions," including a condition prohibiting "'[m]arijuana, even if legalized.'" *Id.* at ¶ 82-83. We also found a clear relationship with the various criminal offenses being committed, i.e., drug use and illegal firearms in a motor vehicle. *Id.* at ¶ 83. Lastly, it was "necessary for the court to take into consideration known drug use in fashioning a sentence that would 'rehabilitate the offender' and prevent future crime." *Id.*

{¶32} There is no doubt that the community control rules prohibiting violations of local, state, and federal laws and taking or having under his control controlled substances only when prescribed by a physician were well within the trial court's discretion to impose, especially under the facts of this case where Mr. Ryan has a history of polysubstance drug abuse, and drug trafficking. Moreover, they were restrictions Mr. Ryan acknowledged and agreed to despite his possession of an active medical marijuana card at the time of his sentencing.

{¶33} The PSI noted that during his presentence interview, Mr. Ryan disclosed the fact that he had an active medical marijuana card at the time of sentencing. The PSI also stated that Mr. Ryan has chemical dependency issues, a history of marijuana possession and trafficking, and has been diagnosed with "Cannabis Use Unspecified." Mr. Ryan signed a copy of the Lake County Court of Common Pleas/Department of Adult

10

Probation rules, acknowledging and certifying that he fully understood them. For him to now argue that the trial court's imposition of these prohibitions is error because they conflict with the OMMCP and that the trial court may not find a violation based on the clear terms of his community control sanctions because he was not using the marijuana, only "stockpiling" it, triggers the obvious question - was Mr. Ryan stockpiling it for his own use at a later time or for sale? Either reason would be a violation of the terms of his community control, just as having the marijuana under his control and purchasing it without advising his probation officer were violations. Nor can he argue that using his medical marijuana card was a "mistake."

{¶34} Applying the *Talty* factors, it is clear that prohibiting Mr. Ryan from using marijuana or having it under his control is reasonably related to rehabilitation, the crimes he committed, and serves the ends of probation, i.e., Mr. Ryan pleaded guilty to trafficking in drugs and aggravated possession of drugs.

{¶35} In this developing area of the law, several courts have addressed the prohibition of medical marijuana as a community control sanction in various procedural stages. For instance, in *State v. Owens*, 3d Dist. Defiance No. 4-20-08, 2021-Ohio-259, the Third District rejected the appellant's argument that the trial court erred by restricting her from using a valid prescription for medical marijuana as part of the terms and conditions of community control during sentencing. *Id.* at ¶ 11, ¶ 18. The court found that despite a mention of a card and a prescription, these items were never introduced into evidence, "so we have no way of knowing if they truly existed, if they were valid, for how long they were valid, or if they expired at a certain point * * *." *Id.* at ¶ 16. Furthermore, the claim was not actually ripe for appeal since the appellant was not found

11

in violation of community control for use of a legitimate, "valid prescription" for medical marijuana. *Id.* at ¶ 17.

{¶36} Likewise, in *State v. Donoho*, 11th Dist. Geauga No. 2018-G-0151, 2018-Ohio-4950, this court determined that the trial court did not abuse its discretion in refusing to modify community control to permit the appellant to use Marinol, a man-made form of cannabis, which is a Schedule III controlled substance that requires a valid prescription from a licensed health professional. *Id.* at ¶ 12, ¶ 14. The lead opinion found it was premature to address the issue at the time of the appeal because the appellant did not test positive and was not charged with a violation. *Id.* at ¶ 19.

{¶37} In *State v. Hobden*, 9th Dist. Wayne No. 19AP0056, 2020-Ohio-2877, the appellant informed the trial court during sentencing that he had a medical marijuana card issued by a physician. *Id.* at ¶ 3. The trial court stated that since it could not differentiate between medical marijuana and recreational uses of marijuana during the appellant's potential 30-day house arrest, it would require him to stop using it entirely. *Id.* After the appellant objected and filed a motion for reconsideration of its decision to prohibit medical marijuana during house arrest, the trial court indicated it would provide him with a report date to begin serving a 30-day jail sentence in the county jail. *Id.* at ¶ 4. The Ninth District overruled the appellant's assignment of error and determined that "[g]iven the trial court's broad discretion in shaping community-control sanctions, this Court cannot say that the trial court's refusal to allow Mr. Hobden to serve his 30-day jail sentence on house arrest under these facts was unreasonable, arbitrary, or unconscionable." *Id.* at ¶ 9.

{¶38} In *State v. Wertman*, 5th Dist. Ashland No. 18 COA 026, 2019-Ohio-7, defense counsel presented mitigating evidence at the sanctions hearing that the

appellant's possession of marijuana was for medical purposes. When the trial court challenged why the appellant did not present this as an affirmative defense, defense counsel conceded that medical marijuana was still technically a violation of community control since the appellant did not properly notify his probation officer about the "prescription" in an appropriately timely manner. *Id.* at ¶ 13. The Fifth District overruled the appellant's ineffective assistance of counsel claim, finding that the appellant admitted and pleaded guilty to the alleged community control violations. *Id.* at ¶ 35. The sanctions imposed "resulted from his guilty plea, not the statements made by his counsel concerning notification." *Id.* Most fundamentally, just as in this case, the appellant provided no evidence in support of such proper notification. *Id.*

{¶39} The Eighth District recently addressed whether a trial court may revoke judicial release based on medical marijuana use in *State v. Sanchez*, 2021-Ohio-1593, 170 N.E.3d 958, ¶ 15 (8th Dist.). During the revocation hearing, the appellant's probation officer informed the court that she sent the appellant's status report to the trial court because the appellant had provided a medical marijuana card for seizures and that "some judges have allowed medical marijuana use during community control supervision." *Id.* at ¶ 9. The trial court responded negatively and asked about the probation department's standard terms regarding drug use. *Id.* The probation officer clarified that it had a "no tolerance" policy and that "there should be no substance use whatsoever." *Id.* The appellant admitted to violating the sanction. *Id.* at ¶ 18. Although the appellant discussed his medical marijuana card, physician's letter, and medical conditions, he did not argue that medical marijuana was or should have been permissible under the conditions of his community control or that he lacked notice that medical marijuana use would be a

13

violation. *Id.* at ¶ 19. The court concluded that the trial court did not err in finding substantial proof that appellant had violated the conditions of his community control. *Id.* at ¶ 20.

{¶40} Likewise, in this case, Mr. Ryan admitted to violating his community control sanctions. He failed to submit any evidence at the revocation hearing, including his medical marijuana card or evidence that the use of marijuana was a medical necessity. Further, he had notice and agreed to the trial court's terms that possession of or using, which includes procuring, a controlled substance would be a violation of his community control.

{¶41} While we are cognizant of the competing issues surrounding crafting meaningful community control sanctions for defendants suffering with substance abuse or other underlying medical conditions and the OMMCP, this is not the case where the intersection of law and medicine has been presented and can be addressed. Further, our determination in this case does not preclude a defendant from raising the use of medical marijuana pursuant to the use of a valid medical marijuana card as an affirmative defense under the proper circumstances.

{¶42} As the United States District Court for the Eastern District of Virginia succinctly stated, albeit under different state laws, "the question before the Court is not whether possession of marijuana is a crime for which one can be federally prosecuted in Virginia, but whether Defendant violated the conditions of his supervised release. One of the conditions of Defendant's supervised release was that he 'refrain from any unlawful use of a controlled substance.' * * * Under federal law, marijuana is a controlled substance and Defendant was found to have possessed marijuana on at least five

14

Case No. 2021-L-032

occasions. Another condition of Defendant's supervised release was that he 'not commit another federal, state, or local crime.' * * * In Virginia, possession of marijuana is both a federal and a state crime. Defendant did not contest his use of marijuana. Consequently, the Court found that Defendant had violated the conditions of his supervised release and reluctantly imposed sentence." *United States v. Guess*, 216 F.Supp.3d 689, 697-698 (E.D.Va.2016).

{¶43} Finding Mr. Ryan's sole assignment of error to be without merit, the judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

JOHN J. EKLUND, J.,

concur.

15

Case No. 2021-L-032